And we will hear the next case, Audio Emotion v. McIntosh. Good morning, Your Honors. Stephanie Bradley for the plaintiff, Audio Emotion. The district court in this case dismissed Audio Emotion's complaint prematurely and subsequently denied leave to amend, despite the fact that it appeared that amendment would cure any defects and that it was still likely that discovery would produce additional evidence showing successor liability. In particular, most cases that decide successor liability do so with the benefit of knowing the terms of the asset purchase agreement. This document is critical because it defines what liability is assumed by the successor corporation and could include an express assumption of liability. In this case, it would have made sense for the successor corporation, Feinstein's Group, to assume the distribution contracts that kept the underlying brands in business. And if there is an express assumption, it obviates the need to do a de facto merger mere continuation analysis at all. Was there anything, any law or other obligation that required the making public of the asset purchase agreement? I don't believe there was any reason. These were private corporations, I believe, so I don't think there's any reason this would be public information that would have been available to the plaintiff. This case is a situation where the information needed to allege the full basis for successor liability is in the hands of the defendant and requires discovery. That holds true both for the asset purchase agreement and also for the evidence of the ownership of these private corporations. But you still need to make allegations in the complaint that would give rise to a And so did the complaint here allege things like continuity of personnel, continuity of physical location, assets, general business operation, etc.? The complaint did allege clearly that the assets were transferred. And so they allege a continuity of assets that the underlying brands were transferred from the predecessor to the successor. They allege that the successor continued the business of audio equipment manufacturing. It alleges that the management stayed the same before and after the purchase. And we also argue that it fairly read. The complaint should be read to allege continuity of location and personnel given that the true business of these And so the great majority of the manufacturing including personnel and where those factories were located would have stayed the same before and after the asset purchase. I'm looking at paragraph 8 of the complaint, the amended complaint, which includes, strike me as quite conclusory allegations, that the assets and goodwill were transferred, that Fine Sounds has ceased to be the holding company. In addition, they share the same senior management. And on information and belief, it's a continuation of Fine Sounds S.P.A. and therefore successor company. It's devoid of any detail. It doesn't say anything about ownership. It doesn't say anything about location or custom. It gives no basis for inferring, I think, that this is a successor under New York law. What am I missing? Well, first I would say that this complaint, of course, was drafted before any discovery took place and without the benefit of any discovery. That's when complaints are usually drafted before discovery. That is, but courts regularly allow this specific issue, successor liability, to proceed to have discovery in order to flesh out these claims. But you have to have some basis for alleging successor liability other than they're in the same business and they've assumed the assets. I mean, our discussions in the case law about the possibility of assuming assets without assuming liabilities explains why. Right. But here they allege that . . . I mean, I don't know that it's possible to give the details beyond that all of the assets were transferred, which is alleged, and that . . . I know that isn't enough. We know that isn't nearly enough, right, for successor liability. You have to have continuity of ownership and other factors. And also, I mean, I guess you now know that liquidation proceedings were started for the prior company, and that would be an important fact. Right. And that was brought to the court's attention in a motion for leave to amend, and so this court would . . . I want to address the denial of leave to amend. Yeah. Right. I think that you've got a stronger basis there. Okay. Well, other courts have held that it's sufficient to say that all of the assets were transferred, that the corporation continued with the same name before and after the transfer, the same business was continued, and that shortly after the asset transfer, the predecessor corporation here, Feinstein's SPA, went out of business. But you still have to focus on continuity of ownership, right? And you just have the 0.13 percent owned by Mr. Randall as continuity. Right. That strikes me as not enough. Why is that wrong? Well, in the first . . . I mean, courts have allowed the continuity of ownership in varying percentages. Here, I would say that . . . You would say 0.13 percent is enough. No court has held what is enough. However, what that does show is that one of the manager owners had ownership in the predecessor corporation, Feinstein's SPA. What we don't know is the higher manager owner, who was the CEO, Mauro Grange, it makes it more likely that he also would have had some ownership interest that hasn't yet been revealed because, again, discovery has not proceeded on this issue. For instance, one of the largest shareholder of Feinstein's SPA was Quadrivio, which was an investment vehicle, and we don't know who owned Quadrivio. Again, discovery is needed to determine that. And the same is true for what we know of the new owners. We know from a press release that says that Mauro Grange and Charles Randall are owners along with two other investment vehicles as well. So we don't know the ownership of the great majority of the shares in the predecessor corporation because discovery was not allowed to proceed on that issue. So I did want to highlight . . . And I would also say that if you look to the case law on this issue, very few are decided on a motion to dismiss. They're almost all on summary judgment. And the ones that are decided on a motion to dismiss have seen the asset purchase agreement. Again, we don't know whether there's an express assumption of liability here yet, and it's impossible to know that without allowing for discovery on this issue. As to continuity of ownership, I would also say that this court in Cargo Partners did say that that's essential to prove the claim. However, that doesn't mean that it must be pled as the Third Circuit held in Thompson where, in the case of private corporations, that information is uniquely in the hands of the defendant. It's not required at the pleading stage. And that was also what the district court held in Ortiz, interpreting Cargo Partners and this court's other precedent, that what you have to show to prove de facto merger is not the same as what you have to plead at the pleading stage. All right. We have some time for rebuttal. We'll hear from the other side. Good morning. Miriam Skolnick from Herzfeld & Rubin on behalf of the Appley. I would first want to point out— You can lower that if you want, by the way. You can't hear me? The whole thing lowers. Got me? There's a button on the lower right part of the podium you can— Oh, okay. That would work better. Okay. Do you hear me? We can hear you. Okay. The first thing I would want to point out, this is the first time that the plaintiff is alleging a contract basis for assumption of liability. That was never alleged in the motions below. It was not raised in opposition. You're just using it as an illustration of the kind of thing that might—the discovery and allowing amendment of the contract. Right, but the arguments that were made in opposition to our motion to dismiss were we're relying only on the second two factors. That was the language that was used. There was no claim that, oh, when we get discovery, maybe we'll be able to allege. That was not at all raised below. Also, the suggestion that the new entity might have assumed this particular contract, even if they assumed any contract, this contract was terminated before the new entity was formed. This contract was terminated in early 2013—or 2014, I'm sorry, and this new entity was first incorporated in May of 2014. When did the liquidation proceedings start with respect to the old company? It started shortly thereafter, but the fact that it's in liquidation, if you look at the joint appendix, which on page 119 shows that Mr. Grange had no shares of stock in the original company, so I don't know what further discovery would show because we have the list of all the shareholders, but it also shows the shareholders of the new company in liquidation, and you have the exact same shareholders in the same percentage. So the company is still there with shareholders are still available, and it exists. But it is in liquidation? It's been in liquidation for several years already. I don't know enough about Italian law to comment on it, but in terms of the suggestion that 0.13 percent, which is the only common ownership here, is enough to create successor liability, stands the law on its head. That's never been the law. Even if there isn't an exact measurement, 0.13 percent is just negligible. It's nonexistent. And to now come and speculate that maybe Quadrivio is really hiding the assets of somebody else is total speculation and doesn't support any of the allegations in the complaint, unless there are any questions. Thank you. Robana? Do you dispute that Mr. Randall is the only person with common ownership? I don't dispute that that's the only person that has been uncovered through discovery, and I would note that we would not even know that had we not already been proceeding with some discovery on this issue. We have, again, we don't have, I think it makes it more likely that Mr. Grange I'm confused. You have got discovery? Discovery was proceeding while the motion to dismiss was pending, so we have gotten some. It's not complete, and the last batch was produced on July 22nd, and the dismissal order came out on August 5th. That's where the evidence of the fact that they were in liquidation came out, was in that last production just before the dismissal order came out. That's also where the evidence that Charles Randall was a shareholder appeared, in that last discovery that had been produced. And my understanding from the trial attorney is that they were ready to proceed to compel further discovery, but then the dismissal order came down, and that was that. So that was the extent of it. You've highlighted what you found significant in the materials that were produced already with respect to the successor liability claim. Is that right? Or is there anything else you want to highlight? Because you didn't proffer a proposed amended complaint, right? You've just highlighted . . . Right. Right. Given the timeframe, there wasn't time for that, but we did . . . So we highlighted the big thing that came out of that was the liquidation, the evidence that they began dissolution proceedings immediately after the asset purchase. The district court did not identify continuity of ownership as a deficiency in its initial dismissal order, and so this new evidence wasn't offered to the district court, which is why . . . But we did mention it here, because it came up. But again, we have not yet been able to find out the ownership interests in Quadrivio, the primary shareholder, and we have not seen the ownership interests in the other investment vehicles in Fine Sounds Group, in the successor corporation. So we don't know . . . Again, there's a large percentage of ownership there that Quadrivio could own some of the new investment vehicles. We don't know that, because Discovery . . . we don't have Discover in that, so it's impossible to state the claim without it. Thank you. Thank you. Thank you. We will reserve decision.